Filed 6/20/23  Conservatorship of Z.A. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| Conservatorship of the Person of Z.A. | |
| CONTRA COSTA COUNTY PUBLIC GUARDIAN, <br><br>       Plaintiff and Respondent, <br><br> v. <br> Z.A., <br><br>       Objector and Appellant. | A166483 <br><br> (Contra Costa County Super. Ct. No. MSP21–00548) |

Appellant Z.A. appeals from a trial court order reappointing the Contra Costa County Public Guardian as conservator of his person under the Lanterman–Petris–Short Act (Welf. & Inst. Code, § 5350 et seq.; LPS Act). This appeal is authorized by Probate Code section 1301.

Appointed counsel has filed a brief setting out the applicable facts and law and asking this court to conduct a review of the record pursuant to *Conservatorship of Ben C.* (2007) 40 Cal.4th 529 (*Ben C.*).  Counsel has also informed appellant that he may file a supplemental brief and that if no supplemental brief is filed, this court might dismiss the appeal as abandoned. Appellant has not filed a supplemental brief.

1

## FACTS AND PROCEDURAL HISTORY

On April 18, 2022, the Director of the Contra Costa County Health Services Department (Public Guardian) filed a petition for reappointment as conservator over appellant. The petition alleged appellant was declared gravely disabled on June 15, 2021, and the conservatorship would terminate on June 14, 2022, absent reappointment.[1] It was alleged that, as a result of a mental disorder, appellant was unable to provide for his basic personal needs for food, clothing, and shelter and he continued to be gravely disabled. The Public Guardian sought imposition of special disabilities that appellant (1) not have the right to refuse psychotropic medications (Welf. & Inst. Code,[2] § 5357, subd. (d)) and (2) be disqualified from possessing firearms or any other deadly weapon (*id*., subd. (f)).

At a hearing on May 13, 2022, appellant objected to reappointment of a conservator and requested a jury trial. (See § 5350, subd. (d)(1) ["The person for whom conservatorship is sought shall have the right to demand a court or jury trial on the issue of whether the person is gravely disabled"].) Appellant was represented by the Public Defender's Office.

A trial on the question whether appellant was gravely disabled began on October 24, 2022, with selection of the jury. Over the next two days, the Public Guardian called three witnesses: Deputy Conservator Candelario Castillo, Dr. Michael Levin, who testified as an expert in psychiatry and evaluating for grave disability, and appellant's sister.

---

[1] The record shows appellant accepted conservatorship on June 15, 2021.

[2] Further undesignated statutory references are to the Welfare and Institutions Code.

Castillo is a licensed clinical social worker. He testified that, as deputy conservator, he is "responsible for ensuring my conservatees are receiving adequate treatment and housing and basically food, clothing or shelter." Castillo served as appellant's conservator. He met appellant over Zoom in August 2022, met with appellant and his treatment team by Zoom in early October, and talked with appellant again by phone in late October. At trial, Castillo testified about appellant's affect and what appellant reported to Castillo about his diagnoses, medications, and recent experiences.[3]

Levin is a psychiatrist who works "for the conservator's office evaluating people and then testifying as to whether or not they are gravely disabled," and he also sees patients at the Concord Adult Mental Health Center. He testified that he has qualified as an expert witness in the area of evaluation for grave disability in California over 200 times. Levin interviewed appellant over Zoom in August and October of 2022 and previously saw him in January 2018 and December 2016. He also reviewed appellant's medical records and spoke with appellant's treating psychiatrist. At trial, Levin described his interviews with appellant and the diagnosis he reached. Levin also gave his opinion regarding appellant's ability to rationally advocate for himself to obtain shelter.

Appellant's sister lived with their parents. She testified her role in the family was "[f]amily caretaker [for] more than ten years." Appellant lived at home with the family in 2021, and his sister testified about his behavior in the home. She visited appellant about two weeks before the trial, and she

---

[3] Appointed counsel applied for leave to file an unredacted brief under seal and a public (redacted) version, noting that medical and psychological reports are confidential, and this court granted the application. This opinion does not discuss evidence that appellant described under seal.

described what he told her during the visit. Appellant's sister testified their parents were over 65 years old and appellant could not live at home with them.

On October 26, the jury began deliberations and reached a verdict, finding appellant was "presently gravely disabled due to a mental disorder."

The court authorized the Public Guardian to place appellant in an appropriate locked treatment facility and imposed special disabilities prohibiting appellant from refusing treatment related to his grave disability and from possessing firearms or other deadly weapons.

## DISCUSSION

"In an indigent criminal defendant's first appeal as a matter of right, the Court of Appeal must independently review the record if appointed counsel represents he or she has found no arguable issues. (*Anders v. California* (1967) 386 U.S. 738 . . .; *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)" (*Ben C.*, *supra*, 40 Cal.4th at p. 535.)

In *Ben C.*, our high court held *Wende* review is not required in conservatorship proceedings such as this one because of the "panoply of safeguards appropriately geared to the specific goals and interests involved" provided under the LPS Act. (*Ben C.*, *supra*, 40 Cal.4th at p. 543.) In dissent, Chief Justice George observed that the majority's decision "in no way prevents the Courts of Appeal from expending the minimal effort required to provide these appeals with a second look and to provide an opinion that briefly notes the court has reviewed the record and that identifies the findings and evidence supporting the order," and he encouraged appellate courts "to expend the few hours required in these rare cases to ensure that conservatees are not inappropriately confined, and to treat these individuals in a considerate and compassionate manner rather than summarily

4

informing them that their appeals are frivolous and have been abandoned." (*Id*. at pp. 556–557 (dis. opn. of George, C.J.).)

Here, appellate counsel has provided a summary of the procedures employed. We have taken the "second look" at the record suggested by the *Ben C.* dissent, and we are satisfied substantial evidence supports the jury's verdict and the trial court's order. Accordingly, we affirm the order reappointing the Public Guardian as conservator over appellant.

## DISPOSITION

The order is affirmed.

_____
Miller, J.

WE CONCUR:


_____
Stewart, P.J.


_____
Markman, J.*


A166483, *Contra Costa County Public Guardian v. Z.A.*

---

   * Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.